THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AL-BERT WILLIAMS, Defendant-Appellant.

Fourth District   No. 4—93—0699

Opinion filed September 26, 1995.

Daniel D. Yuhas and Kelly Williams, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On November 23, 1983, defendant Albert Williams was charged in the circuit court of Macon County with the offense of retail theft with a prior theft conviction (Ill. Rev. Stat. 1981, ch. 38, par. 16A—3(a)) occurring on November 22, 1983. After a fitness hearing at which defendant was found fit to stand trial, the case was set for jury trial on February 23, 1984, at which time defendant did not appear. The defendant was tried before a jury in his absence and on that date, the

court entered a judgment on the verdict of the jury finding defendant guilty. On March 2, 1984, in defendant's absence, the court proceeded to hear and deny defendant's post-trial motion and sentenced defendant to three years' imprisonment.

On June 22, 1993, defendant filed a motion in the circuit court of Macon County seeking to have his conviction and sentence voided pursuant to section 115—4.1(e) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—4.1(e) (West 1992)). On July 9, 1993, the circuit court denied the motion. On August 6, 1993, the defendant filed a notice of appeal from the denial of that motion. On December 30, 1994, this court entered a summary order affirming pursuant to Supreme Court Rule 23(c)(2) (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23(c)(2), eff. July 1, 1994). (*People v. Williams* (4th Dist. 1994), No. 4—93—0699 (unpublished order under Supreme Court Rule 23).) The order was based on the theory that all defendant's claims of error concerned errors allegedly arising at trial and sentencing and did not concern the propriety of trying defendant *in absentia*. Defendant filed a motion for rehearing which was allowed January 30, 1995.

■ Section 115—4.1 of the Code provides for the trial of a person charged with a crime who is absent at the time of trial. Subsection (e) thereof provides for a procedure whereby a defendant convicted *in absentia* may obtain a new trial or new sentencing hearing if that defendant "can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control." (725 ILCS 5/115—4.1(e) (West 1992).) Paragraph (g) of the Code then provides:

> "A defendant whose motion under paragraph (e) for a new trial or new sentencing hearing has been denied may file a notice of appeal therefrom. Such notice may also include a request for review of the judgment and sentence not vacated by the trial court." 725 ILCS 5/115—4.1(g) (West 1992).

We concluded we had been mistaken in summarily affirming the order on appeal because defendant's notice of appeal was sufficient to indicate a request for a review of the judgment of conviction and sentence referred to in paragraph (g). On this appeal defendant maintains that (1) the State failed to present sufficient evidence to support a determination that defendant was the person committing the offense; (2) errors occurred in determining that defendant was fit to stand trial; (3) the court did not properly advise defendant of his need to appear at trial; (4) errors occurred at sentencing; and (5) at sentencing, defendant was not given sufficient credit for time served. We affirm.

■ We have a responsibility to *sua sponte* determine whether we have jurisdiction. (*In re Marriage of Betts* (1987), 159 Ill. App. 3d 327, 330, 511 N.E.2d 732, 734; *Rothert v. Rothert* (1982), 109 Ill. App. 3d 911, 918, 441 N.E.2d 179, 183.) In this regard we are concerned with whether section 115—4.1(g) of the Code (725 ILCS 5/115—4.1(g) (West 1992)), purporting to give defendant a "review of the judgment and sentence not vacated by the trial court," is void, at least as applied here, because of a conflict between it and Supreme Court Rule 606(b) (134 Ill. 2d R. 606(b)). That rule requires most appeals by defendants in criminal cases to be perfected within 30 days from the order appealed. Here, defendant seeks review of a judgment of conviction and sentence entered apparently a decade earlier. Rule 606(b) states as follows:

> "Time. Except as provided in Rule 604(d), the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion. Within 5 days of its being so filed a copy of the notice of appeal or an amendment of the notice of appeal shall be transmitted by the clerk of the circuit court to the clerk of the court to which the appeal is taken. Except as provided in paragraph (c) below, and in Rule 604(d), no appeal may be taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken." (134 Ill. 2d R. 606(b).)

Rule 604(d) (134 Ill. 2d R. 604(d)) concerns appeals from judgments arising from pleas of guilty. Rule 606(c) (134 Ill. 2d R. 606(c)) allows extensions of time for filing notices of appeal from judgments otherwise covered by Rule 606(b) when extenuating circumstances, not involved here, exist.

We requested the parties to brief this issue and they have made a suitable response. A complicated question exists as to whether section 115—4.1(g) of the Code and Rule 606(b) are in conflict in the vast majority of cases where the section 115—4.1(g) appeal is taken many months after the defendant's conviction and sentence. We conclude that no conflict exists, section 115—4.1(g) can be validly applied and we do have jurisdiction.

Aspects of the relationship between section 115—4.1(e) and Rule 606(b) were before the supreme court in *People v. Partee* (1988), 125 Ill. 2d 24, 530 N.E.2d 460. There, a defendant was convicted of crime *in absentia*. His counsel then filed a timely notice of appeal to the appellate court. The State sought to have the appellate court dismiss the appeal on the theory that when a defendant was tried *in absentia*,

the conviction and sentence do not constitute a final judgment appealable under Rule 606(b) until a section 115—4.1(e) motion is filed and ruled on. The appellate court rejected the State's contention but remanded to the circuit court to obtain a clarification of a discrepancy between the common law record and the report of proceedings. *People v. Partee* (1987), 153 Ill. App. 3d 841, 506 N.E.2d 629.

The supreme court granted leave to appeal in *Partee* and affirmed. The supreme court noted the importance of protecting the rights of a defendant tried *in absentia* and indicated that the State's position would require a defendant properly tried in his absence, but in a trial where error occurred, to falsely make a claim under section 115—4.1(e) of the Code in order to raise other errors that might have occurred at trial. The *Partee* court further explained the difficulty with the State's contention in these words:

"The first difficulty, which is really conceptual, rests upon the premise that a section 115—4.1(e) motion to vacate a judgment and the underlying judgment *in absentia* are part of the same 'case.' If so, then it would be truly difficult to divide jurisdiction between the circuit and appellate courts. However, defendant argues, and we agree, that a section 115—4.1(e) motion is actually more akin to a collateral attack upon a final judgment than it is to a procedural step in the direct appeal of that judgment. In other words, a section 115—4.1(e) motion is analogous to an action for post-judgment relief under section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) or an action for post-conviction relief under section 122—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*). Since a collateral attack upon a judgment is a case separate and apart from the case in which the judgment has been attacked, it has been held that the availability or pendency of a direct appeal will not affect the ripeness of a claim for post-conviction or post-judgment relief (see *People v. Edsall* (1981), 94 Ill. App. 3d 469[, 418 N.E.2d 943]; *People v. Alfano* (1981), 95 Ill. App. 3d 1026[, 420 N.E.2d 1114]); conversely, the pendency or availability of the collateral remedy will not affect the jurisdiction of the appellate court over a direct appeal (*People v. Boer* (1914), 262 Ill. 152[, 104 N.E. 162]; *Johnson v. Thomas* (1966), 75 Ill. App. 2d 407[, 221 N.E.2d 44]). Thus, the jurisdiction of the appellate court over the direct appeal does not affect the circuit court's jurisdiction over a defendant's section 115—4.1(e) motion, and the jurisdiction of the circuit court over the section 115—4.1(e) motion does not deprive the appellate court of jurisdiction over the defendant's initial appeal." *Partee*, 125 Ill. 2d at 35-36, 530 N.E.2d at 465.

Thus, under *Partee*, the section 115—4.1(e) motion is similar to a

collateral attack on a conviction and sentence obtained against an absent defendant. The section 115—4.1(g) appeal is from a final order of that collateral proceeding. The legislature has engrafted the request for review of the conviction and sentence as a part of that appeal from the final order of the collateral proceeding. Accordingly, permitting that review as long as it is perfected within 30 days of the entry of the ruling on the section 115—4.1(e) motion is consistent with Supreme Court Rule 606(b).

As the legislation does enable a defendant tried *in absentia* to obtain a general review of his conviction and sentence more than 30 days after entry of conviction and sentence, the situation presented does create some tension between the Supreme Court of Illinois and the Illinois General Assembly as to appellate procedure. Beginning shortly after the effective date of the amendment to the judicial article of the Illinois Constitution of 1870 (Ill. Const. 1870, art. VI (as amended)) and continuing until the present judicial article (Ill. Const. 1970, art. VI), the supreme court by its decisions seemed to indicate that it had exclusive power to make rules in regard to appellate procedure. (*People v. Taylor* (1971), 50 Ill. 2d 136, 277 N.E.2d 878; *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495.) Then, in *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, the court seemed to indicate that the court's rule-making power was the same regardless of whether rules for trial or appellate practice were involved.

In *O'Connell v. Saint Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322, the court held that Supreme Court Rule 103(b) (87 Ill. 2d R. 103(b)) prevailed over sections 2—1009 and 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—1009, 13—217). However, the opinion indicated that the legislature had some part in providing for procedural rules. That court stated:

> "The Illinois Constitution clearly empowers this court to promulgate procedural rules to facilitate the judiciary in the discharge of its constitutional duties. [Citations.] We have noted, however, that the constitutional authority to promulgate procedural rules, in certain circumstances, can be concurrent between this court and the legislature. [Citations.] Because procedural rule-making is concurrent on occasion, we have sought to reconcile, where possible, conflicts between rules of this court and legislative enactments. [Citation.] While we have favored reconciliation, we have not hesitated to strike down those procedural legislative enactments which unduly infringe upon our constitutional rule-making authority. '[W]here a rule of this court on a matter within the court's authority and a statute on the same subject conflict, the rule will prevail.'" (Emphasis omitted.)

(*O'Connell*, 112 Ill. 2d at 281, 492 N.E.2d at 1326, quoting *People v. Cox* (1980), 82 Ill. 2d 268, 274, 412 N.E.2d 541, 545.) Noting a shift from the earlier decisions of the supreme court concerning the apparently exclusive supreme court power in regard to rules of appellate procedure, the *O'Connell* court (112 Ill. 2d at 281, 492 N.E.2d at 1326) indicated that its opinion should be compared with that in *People ex rel. Stamos* (40 Ill. 2d at 66, 237 N.E.2d at 498).

The *Partee* court noted the existence "of a complex series of tradeoffs [in the legislation involved here] designed to balance the defendant's right to be present at trial, the State's interest in the expeditious administration of justice, and our traditional distrust of trials *in absentia*." (*Partee*, 125 Ill. 2d at 40, 530 N.E.2d at 467.) In *Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 389 N.E.2d 1170, the supreme court upheld legislation in the then new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*), which required a bifurcation of hearings on grounds and other issues and at least a 48-hour period between the proceedings (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)). The court indicated that the fact that the procedure was part of a statutory scheme was a further reason to uphold the procedure. *Strukoff*, 76 Ill. 2d at 61, 389 N.E.2d at 1173.

■ Here, the provision of section 115—4.1(g) providing for review long after the conviction or sentence is a matter of procedure. However, the legislation makes the appeal on the merits a part of the appeal of the ruling on the collateral attack brought pursuant to section 115—4.1(e) of the Code. The appeal must be brought within the time frame required by Rule 606(b) from the final order of that collateral proceeding. Thus conflict with Rule 606(b) is only indirect. Moreover, the provision of section 115—4.1(g) of the Code permitting review of the conviction and sentence is part of a statutory scheme to afford due process to persons tried *in absentia*. We conclude that the separation of powers doctrine in regard to court procedures is not violated by section 115—4.1(g).

We now turn to the merits of the review of the conviction and sentence, addressing first the sufficiency of the evidence to support a determination that defendant was the person who committed the offense.

At trial James R. Walden, a security officer employed by a grocery store in Macon County, testified that (1) on November 22, 1983, at 6:45 p.m., he observed a black male enter the store and place two packages, later identified as fried chicken, in his front trouser pocket; (2) the man then purchased a box of crackers and attempted to leave the store with the two packages of chicken in his pocket; (3) he

stopped the man at the end of the checkout lane and retrieved the packages of chicken from the man's pocket; (4) he identified the person in a photograph marked as People's exhibit 1 as the man he observed in the store holding the chicken he had taken; and (5) he turned the man over to the police and later learned the man's name was Albert Williams. On cross-examination, Walden acknowledged that he had taken the photograph he identified as People's exhibit No. 1 and that the retail value of the chicken was 99 cents.

Shirley Campbell, a cashier at the grocery store testified that (1) she observed Walden stop a customer who had just purchased a box of crackers through her checkout lane; (2) she observed Walden retrieve meat from the man's pocket which he had not purchased; and (3) she identified People's exhibit No. 1 as the man Walden stopped and on whose person the meat was found. On cross-examination, Campbell admitted she did not see the man put the chicken in his pocket. Defendant presented no evidence. The circuit court deemed that the pose of the defendant in the photograph was too prejudicial to permit its introduction into evidence.

■ In asserting that the evidence was insufficient to show that defendant was the person committing the offense, the defense relies on *People v. Johnston* (1987), 160 Ill. App. 3d 536, 543, 513 N.E.2d 528, 532-33, and *People v. Broyld* (1986), 146 Ill. App. 3d 693, 695-96, 497 N.E.2d 147, 149, where this court considered the quantum of proof necessary to show that the offender described by the witnesses was the same person as the defendant tried *in absentia*. Recognizing that the supreme court had adopted the general rule that "identity of a name gives rise to a rebuttable presumption of identity of person," this court held that such a presumption was insufficient to prove identity beyond a reasonable doubt without some corroborating evidence. (*Johnston*, 160 Ill. App. 3d at 543, 513 N.E.2d at 533; see also *Broyld*, 146 Ill. App. 3d at 696, 497 N.E.2d at 149.) Examples of sufficiently corroborating evidence include (1) evidence that the offender was arrested and taken to the police station; (2) evidence that the offender had been interviewed by a police officer and had confessed; and (3) evidence of a verbal description of the accused which is corroborated by reference to a photograph. *Johnston*, 160 Ill. App. 3d at 543, 513 N.E.2d at 533.

Here, without the introduction of the photograph into evidence, the evidence did contain testimony that the perpetrator of the offense was named Albert Williams and that was defendant's name. This was corroborated by evidence that the offender was taken to the rear of the store and turned over to police.

■ In regard to defendant's contention that error occurred in

determining he was fit to stand trial, the parties acknowledge that because defendant failed to either object to a psychiatric report recommending a finding of fitness, request further evaluation, or raise issues concerning his fitness in his post-trial motion, ordinarily issues concerning his fitness would be deemed waived on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, defendant maintains that the issue of the fitness of a defendant tried *in absentia* is of constitutional dimension (see *Drope v. Missouri* (1975), 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896); thus, this court must consider the issue under the plain error doctrine set forth in Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). We need not consider whether the plain error doctrine applies because we deem no error, plain error or other, has occurred.

The record indicates that prior to trial defendant's appointed counsel filed a petition for examination alleging that a *bona fide* doubt existed as to defendant's fitness to stand trial based on conversation with defendant and a prior finding of unfitness. A fitness hearing was held and a psychiatrist's report was received into evidence by stipulation of the parties. Specifically, the parties stipulated that the "[c]ourt may receive report of Decatur Mental Health Center in evidence and consider findings and conclusions therein." No other evidence was presented at the hearing. The report was prepared by a psychologist who had previously evaluated defendant in 1982 and 1983 and had then recommended he be found unfit to stand trial. The report indicated that defendant had once previously been found unfit to stand trial but he had improved since the last evaluation. The psychologist noted that defendant's hygiene and affect had improved and he was not suffering from delusions or hallucinations. In addition, the psychologist concluded that defendant was cooperative, coherent, and responded to questions appropriately. The psychiatrist recommended a finding of fitness. Following the hearing the court found defendant fit to stand trial and set a trial date. The record does not contain a transcript of the hearing but only a docket entry reflecting the court's finding of fitness.

Initially, defendant claims that because he had a history of mental illness and had been previously found unfit to stand trial in an unrelated case, the trial court erred in proceeding to trial *in absentia* without inquiring further into his fitness. However, defendant does not cite to any precedent which would require further inquiry into his fitness to stand trial in order to proceed *in absentia* when he was previously found fit approximately one month earlier. Moreover, immediately prior to trial, defense counsel advised the court he saw defendant at 5:30 p.m. the previous day and he was

"ambulatory." Defense counsel made no indication that defendant's mental health had deteriorated. Under the circumstances, defendant's failure to appear at trial, alone, did not raise a *bona fide* doubt of fitness since the fitness hearing.

Furthermore, defendant maintains that the trial court failed to exercise its discretion and entered a finding of fitness relying solely on the stipulated psychiatric report recommending a finding of fitness; thus, he was deprived of a meaningful hearing. In *People v. Lewis* (1984), 103 Ill. 2d 111, 468 N.E.2d 1222, the supreme court discussed the use of stipulated psychiatric reports at fitness restoration hearings and distinguished the use of stipulations to the fact of fitness and stipulations to the psychiatrist's opinions and conclusions as to fitness. The *Lewis* court held that the court's consideration of the later stipulated report was proper and set forth the following standard:

> "Upon considering these stipulations and personally observing defendants, the circuit court could find defendants fit, seek more information, or find the evidence insufficient to support a finding of restoration to fitness. *** 'The ultimate issue was for the trial court, not the experts, to decide.'" *Lewis*, 103 Ill. 2d at 116, 468 N.E.2d at 1225, quoting *People v. Bilyew* (1978), 73 Ill. 2d 294, 302, 383 N.E.2d 212, 215.

In the present case, the parties did not stipulate to the fact of fitness but only that the psychologist had made certain findings and conclusions which the court could consider. Thus, the court's finding of fitness was not improperly based on a stipulation to the fact of defendant's fitness, and there is nothing in the record to indicate that the court relied solely on the psychiatric report. Rather, the trial court properly considered the report and, along with its personal observations of defendant at a number of court appearances prior to the fitness hearing, entered a finding of fitness. This procedure was approved by the court in *Lewis*, and no further evidence was necessarily required.

Defendant further contends that the psychiatric report did not fully comply with section 104—15(a)(1) of the Code (725 ILCS 5/104—15(a)(1) (West 1992)) by failing to state a "diagnosis and an explanation as to how it was reached and the facts upon which it is based" as required by that section. In *People v. Harris* (1983), 113 Ill. App. 3d 663, 447 N.E.2d 941, the appellate court held that the circuit court erred in failing to order a hearing on the defendant's fitness to stand trial and remanded for a new trial, noting that the limited psychiatric report evaluating defendant's fitness to be sentenced was entirely conclusory and failed to provide a meaningful evaluation of the

defendant's fitness. Furthermore, the court noted that the evaluation was hastily performed on the morning of the sentencing hearing.

Here, although the psychiatric report did not set forth a specific medical diagnosis, unlike the report in *Harris*, in all other respects it comported to the statutory requirements and provided an inclusive evaluation for the court. The trial court had ample opportunity to observe the defendant and under the circumstances any deficiency in failing to state a diagnosis did not prejudice defendant.

■ In addition, defendant claims the court did not properly advise him of the need to appear at trial. Section 115—4.1(a) of the Code allows a trial *in absentia* "after the State had affirmatively proven through substantial evidence that the defendant is willfully avoiding trial." (725 ILCS 5/115—4.1(a) (West 1992).) In *People v. Garner* (1992), 147 Ill. 2d 467, 482, 590 N.E.2d 470, 477, the supreme court held that in order to proceed to trial *in absentia*, the defendant must first be admonished at the time of arraignment that a trial could be held in his absence if he failed to appear (Ill. Rev. Stat. 1981, ch. 38, par. 113—4(e)). The defendant must also knowingly and intelligently waive his right to be present. To establish a *prima facie* case that the defendant willfully elected not to appear at trial, the State must establish the defendant (1) was admonished that his failure to appear could result in a trial in his absence, (2) was given notice of the trial date, and (3) did not appear for trial. *Broyld*, 146 Ill. App. 3d at 699, 497 N.E.2d at 151.

In the present case, the record establishes that defendant was advised at his arraignment that "should he fail to appear at the time specified for trial he will be deemed to have waived his right to confront the witnesses against him, and the trial may proceed in his absence." Defendant was present in court on February 14, 1984, when the trial court set the trial date for February 23, 1984, at 9:30 a.m.; thus, he was advised of the trial date. Defendant did not appear for trial. Accordingly, the State presented a *prima facie* case that defendant was willfully absent and defendant did not present any evidence to the contrary.

Defendant maintains that the court interjected some confusion as to whether defendant had to appear at trial by advising defendant on January 9, 1984, that he need not appear at a hearing on the status of obtaining counsel of choice if counsel of choice appears and enters his appearance for defendant. Defendant maintains he was further confused by the court's statement on February 14, 1984, that if he obtained new counsel a motion for continuance would be favorably considered. Both statements concerned what would happen if defendant retained counsel of choice, which he did not do. Nothing in the

court's statement would give defendant the impression he need not appear at trial.

■ One of defendant's contentions concerning alleged errors in sentencing is that the court indicated that the low value of the property taken did not necessarily require a low sentence. The court indicated that the dominant factor in imposing sentence was the repeated nature of defendant's offenses. The court's reasoning was fully justified.

■ Defendant also contends his sentence was a result of an improper double enhancement where the trial court used a prior 1982 theft conviction to enhance his present retail theft charge to a felony and also as a factor in aggravation. However, this court has previously held that it is not an impermissible double enhancement to use a prior theft conviction to enhance a current misdemeanor theft conviction to a felony and also as part of the defendant's overall criminal history to determine the length of a sentence. (*People v. Anderson* (1991), 211 Ill. App. 3d 140, 143-44, 569 N.E.2d 1178, 1181-82.) Accordingly, the court's consideration of the 1982 theft conviction as a part of his criminal background in determining the sentence was proper.

■ Finally, defendant contends that the circuit court erred in refusing his motion of August 23, 1993, to amend the sentencing order to give him credit for time served while awaiting extradition and hearing. Prior to the filing of that motion, on August 5, 1993, defendant had filed a notice of appeal. Thus the circuit court had lost jurisdiction to change the sentencing order prior to the filing of the August 23, 1993, motion. (See *People v. Jackson* (1992), 239 Ill. App. 3d 165, 167, 606 N.E.2d 809, 810.) The refusal to amend the order was proper.

For the reasons stated, we affirm.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.