THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN J. JUSTICE, Defendant-Appellant.

Fourth District    No. 4—02—0903

Opinion filed June 25, 2004.

Michael J. Pelletier and Rebecca I. Levy, both of State Appellate Defender's Office, of Chicago, for appellant.

Barney S. Bier, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 2002, defendant, Steven J. Justice, pleaded guilty to two counts of first degree murder (720 ILCS 5/9—1(a)(1) (West 2000)). In exchange for his guilty plea, (1) the State agreed to (a) dismiss other charges and (b) recommend a sentence of natural life in prison; and (2) the Lincoln County, Nebraska, State's Attorney agreed (a) to recommend a life sentence if defendant pleaded guilty to a first-degree-murder charge then pending in Nebraska and (b) that defendant would serve his sentences in a Nebraska prison. In February 2002, the trial court sentenced defendant to two concurrent terms of natural life in prison.

In August 2002, defendant filed a second-amended motion to withdraw his guilty plea, alleging, in pertinent part, that he did not knowingly and voluntarily enter his guilty plea because he lacked the mental capacity to do so. Later that month, the trial court granted defense counsel's motion to allow defendant, who was then imprisoned in Nebraska, to return to Illinois for a hearing on the motion to withdraw. In October 2002, defense counsel filed a document waiving defendant's presence at the hearing. At a hearing on defendant's motion held later that month, the court accepted defendant's waiver and

proceeded with the hearing. Following the hearing, the court denied defendant's motion to withdraw his guilty plea.

Defendant appeals, arguing that (1) the trial court erred by accepting the waiver of his presence at the October 2002 hearing; and (2) he received ineffective assistance of postplea counsel when counsel allowed him to waive his presence at the hearing. We disagree and affirm.

## I. BACKGROUND

In July 2001, the State charged defendant and his codefendant, Billy Reed, with two counts of first degree murder, alleging that they, (1) "without legal justification and with the intent to kill Harold Steiner," shot Harold in the head, thereby causing his death (count I); and (2) "without legal justification and with the intent to kill Bernice Steiner," shot Bernice in the head, thereby causing her death (count II) (720 ILCS 5/9—1(a)(1) (West 2000)). The State later charged defendant and Reed with (1) aggravated arson (count III) (720 ILCS 5/20—1.1 (West 2000)), (2) residential arson (count IV) (720 ILCS 5/20—1.2 (West 2000)), (3) arson (count V) (720 ILCS 5/20—1(a) (West 2000)), and (4) theft of property valued over $300 (count VI) (720 ILCS 5/16—1(a)(1)(A) (West 2000)). The trial court later dismissed count III, upon finding that no probable cause existed. (Defendant's case was severed from Reed's, and Reed is not a party to this appeal.)

In November 2001, defendant, who was then in the Adams County jail awaiting trial, filed a motion, requesting that the trial court order the Adams County sheriff to transport him to see a physician. Defendant's motion alleged that (1) he was unable to sleep; and (2) jail employees had denied his requests to be examined by a physician. Following a nonevidentiary hearing later that month, the court found that it did not have "sufficient evidence to grant or deny defendant's motion." Nonetheless, the court ordered that jail employees provide any necessary medical treatment to defendant.

At the January 2002 guilty plea proceedings, the State informed the trial court that defendant had agreed to plead guilty to counts I and II. In exchange for his plea, (1) the State agreed to (a) dismiss the remaining counts and (b) recommend a sentence of natural life in prison; and (2) the Lincoln County, Nebraska, State's Attorney agreed (a) to recommend a life sentence if defendant pleaded guilty to a first-degree-murder charge then pending in Nebraska and (b) that defendant would serve his sentences in a Nebraska prison.

The trial court confirmed that defendant understood the rights he was giving up by pleading guilty. Defendant informed the court that he (1) had authorized defense counsel to enter into plea negotiations with the State and (2) understood the terms of his plea agreement.

The State provided, in pertinent part, the following factual basis for defendant's guilty plea. On the evening of July 2, 2001, the Tri-Township fire department was dispatched to a fire at the Steiners' residence, which was located at 8803 Dedert Road in Adams County. Firefighters entered the residence and found the bodies of Harold, who was then 85 years old, and Bernice, who was then 80 years old, in the basement. Police arrived and found that (1) both Harold and Bernice had been tied up and shot in the back of the head; and (2) the Steiners' 1994 red Ford Probe had been stolen.

During the early morning hours on July 6, 2001, Decatur police officers saw four individuals in a red Ford Probe. Following a high-speed chase, two occupants got out of the car and fled. The other two occupants remained in the car and identified the individuals who fled as defendant and Reed. Officers searched the car (which was determined to belong to the Steiners) and found a pair of pants stained with Harold's blood. Later that morning, officers apprehended defendant and Reed.

The trial court accepted the State's factual basis, found that defendant had knowingly and voluntarily entered his guilty plea, and accepted the plea.

Defendant was extradited to Nebraska, where he pleaded guilty to murder (Neb. Rev. Stat. § 28—303 (2000)) and was sentenced to life in prison.

In February 2002, defendant returned to Illinois for his sentencing hearing. At the hearing, the trial court sentenced defendant to two concurrent terms of natural life in prison, in accordance with the terms of his plea agreement. Defendant was then transported to Nebraska to serve his sentences.

In March 2002, defendant, through his defense counsel, filed motions to withdraw his guilty plea and appoint new counsel. Following an April 2002 nonevidentiary hearing on the motions, the trial court ordered defense counsel to file (1) a certificate under Supreme Court Rule 604(d) (188 Ill. 2d R. 604(d)) and (2) an amended motion to appoint new counsel containing defendant's signature. The court also granted defense counsel permission to file an amended motion to withdraw defendant's guilty plea.

Later in April 2002, defense counsel filed amended motions to withdraw defendant's guilty plea and appoint new counsel. Attached to the motions were (1) a letter signed by defendant, stating that he did not receive effective assistance of counsel during guilty plea proceedings, and (2) a Rule 604(d) certificate signed by defense counsel. In May 2002, the trial court appointed new counsel to represent defendant on the motion to withdraw his guilty plea.

In August 2002, defendant, through his newly appointed counsel, filed a second-amended motion to withdraw his guilty plea. The motion alleged that (1) defendant did not knowingly and voluntarily enter his guilty plea because he lacked the mental capacity to do so due to lack of sleep; (2) he did not knowingly waive his right to a jury trial; (3) he was not properly advised that under Nebraska law, his life sentence was subject to parole; (4) his trial counsel provided ineffective assistance of counsel by failing to follow up on his November 2001 motion seeking medical treatment; and (5) the trial court failed to properly admonish him regarding the procedure to be followed in sentencing him to death. Attached to the motion was defendant's affidavit, in which he averred that he was unable to comprehend both the guilty plea and sentencing hearings because he had not slept for 36 hours prior to the plea hearing and had not slept for 48 hours prior to the sentencing hearing.

Also in August 2002, defendant's appointed counsel filed a motion, requesting that defendant be allowed to attend the hearing on the motion to withdraw his guilty plea. Following an August 2002 nonevidentiary hearing, the trial court granted the motion, upon determining that defendant's presence at the hearing was required because the motion to withdraw his guilty plea alleged facts outside the record and raised issues requiring an evidentiary hearing.

Due to delays in transporting defendant from Nebraska to Illinois, the trial court set the motion for an October 17, 2002, hearing. On October 9, 2002, defendant, through his appointed counsel, filed a "waiver of presence," stating that he waived his right to be present at the October 17, 2002, hearing. Attached thereto was an October 7, 2002, letter from defendant to counsel, which stated as follows: "I do not want to be present for my Oct[ober] 17[, 2002,] hearing in Quincy. I have thought about it and it wouldn't be a good idea. Thank you. Steven Justice."

At the October 17, 2002, hearing on defendant's motion to withdraw his guilty plea, the following colloquy occurred:

"[THE COURT:] [Defense counsel], you have filed several motions and one of those filings of yours—not a motion, is a [w]aiver of [p]resence. Would you like to address yourself to that issue?

[DEFENSE COUNSEL]: Yes, Your Honor. As the [c]ourt is quite aware, the last couple of times we were in [c]ourt the matter had to be continued in that [defendant] was exercising his right to be present at the hearing on the [m]otion to [w]ithdraw his [p]lea of [g]uilty and to [v]acate the [j]udgment. Since that time, I had received a written document, a letter from [defendant], which I did attach to the—what I call the waiver—where he, in fact, advised

me that he did not wish to be present. I would further make an avow[al] to the [c]ourt that I also had two telephone calls from [defendant], wherein both of those calls he also indicated that he did not wish to be present. So based upon that representation of [defendant] and the correspondence, we are asking that his presence be excused for this hearing.

THE COURT: And, [defense counsel], for the record, did you have an opportunity to advise him that he was—that the [c]ourt was willing to and, in fact, had ordered him to be made available to the [c]ourt?

[DEFENSE COUNSEL]: Yes, he was fully aware of that. He was aware of even the procedure that was going on at the time he exercised his waiver, between the two—between the State[s] of Illinois and Nebraska, and in regard to papers that at that time were being filed to bring him back here. So he was fully aware of what was going on.

THE COURT: And that is because you told him about it?

[DEFENSE COUNSEL]: Yes.

THE COURT: And it is my understanding that, in fact, the mechanism between governors *et cetera*, had been set in motion to have him return to this courthouse today at this time?

[DEFENSE COUNSEL]: That is correct.

THE COURT: And you believe that had that been able to come to full [*sic*] that, in fact, he would have been here today?

[DEFENSE COUNSEL]: That is correct.

THE COURT: [State's Attorney].

[STATE'S ATTORNEY]: Yes, Your Honor. I received a week ago Monday, which would have been October 7th, I believe a copy of the agreement from the State of Nebraska from the Attorney General's Office, accompanied by a letter stating that they had spoken to the governor out there, it is William H-O-W-L-A-N-D, he is Assistant Attorney General. I have a copy of the agreement. I [F]ed [E]xed the agreement to the State of Illinois Governor's Office, asked them to act promptly. I also had a conversation with Mr. Howland the same day it was planned that [defendant] would appear in court on Tuesday of this week before a judge to waive basically extradition; that is the wrong term, but that is the term that I will use, and also agree to come back to the State of Nebraska. We had everything in motion. Our office contacted the sheriff's department. We were ready to go and pick up [defendant] on Tuesday of this week to make him available for court today. We then were advised that he did not want to come back. I talked to [defense counsel] about it and learned everything that he has told you today. ***

THE COURT: [State's Attorney], are you in his absence insisting that he be here?

[STATE'S ATTORNEY]: No, sir. \*\*\*

THE COURT: [Defense counsel], are you insisting that your client be here?

[DEFENSE COUNSEL]: No, Your Honor, not based upon his representation to me."

The court accepted defendant's waiver of his presence, stating, in pertinent part, as follows:

"[W]ith respect to the defendant's waiver of presence, the [c]ourt will accept his waiver of presence in court today. Steps were taken to get him here. Everything was in place. The mechanism was in place to have him here, and he indicated in writing, as is attached to his waiver of presence, and in telephone contact with [defense counsel] directly[,] that he did not, for whatever reason, after having expressed a desire to be here, he no longer wanted to be here and so he is not here."

The State presented three witnesses, the Adams County jail administrator and two jail correctional officers, who testified as to defendant's alleged inability to sleep prior to the guilty plea and sentencing hearings and the medical treatment he received. After considering the evidence and counsel's arguments, the trial court denied defendant's motion to withdraw his guilty plea.

This appeal followed.

## II. ANALYSIS

### A. Defendant's Claim That the Trial Court Erred by Accepting His Waiver of Presence

Defendant first argues that the trial court erred by accepting his waiver of presence at the October 2002 hearing on the motion to withdraw his guilty plea. We disagree.

Although a defendant has no absolute right to be present at a hearing on a motion to withdraw a guilty plea, a defendant should be allowed to be present in appropriate circumstances. *People v. Porter*, 258 Ill. App. 3d 200, 204, 630 N.E.2d 1350, 1353 (1994). If the motion to withdraw alleges facts outside the record or raises issues that may not be resolved without an evidentiary hearing, the defendant should be present. *People v. Barnes*, 263 Ill. App. 3d 736, 739, 635 N.E.2d 698, 700 (1994). The right to be present, however, can be waived by the defendant. See *People v. Wilson*, 257 Ill. App. 3d 670, 679, 628 N.E.2d 472, 481 (1993) (in which the appellate court concluded that the defendant waived his right to be present during the individual *voir dire* of prospective jurors where defense counsel informed the trial court, in the defendant's presence, that the defendant was waiving his right to be present); *cf. People v. Smith*, 188 Ill. 2d 335, 341, 721

N.E.2d 553, 557 (1999) (a defendant waives the right to be present at trial when he is voluntarily absent from trial). Defense counsel may waive a defendant's right to be present only if the defendant voluntarily, knowingly, and intelligently waived his right. See *People v. Stewart*, 303 Ill. App. 3d 844, 849, 708 N.E.2d 1241, 1245 (1999) (in which this court concluded that the defendant had not waived his right to be present at a hearing to determine the admissibility of a child victim's hearsay testimony where defense counsel did not give the defendant a chance to appear at the hearing).

As in other cases where trial courts are called upon to determine whether defendants have validly waived their rights, we will review the trial court's decision to accept a defendant's waiver of his right to be present at a hearing on a postplea motion under an abuse-of-discretion standard. See, for example, *People v. Hughes*, 315 Ill. App. 3d 86, 91, 733 N.E.2d 705, 709 (2000) (holding that the appellate court should review a trial court's determination that a defendant has waived his right to counsel under an abuse-of-discretion standard).

■ In this case, defendant clearly waived his right to be present at the hearing on the motion to withdraw his guilty plea. The record shows that defendant knew that (1) he had a right to be present at the hearing and (2) the appropriate steps had been taken to secure his transportation to Illinois for the hearing. The record also shows that defendant (1) sent a letter to his counsel, stating that he did not want to be present at the hearing, and (2) told his counsel during two telephone conversations that he did not want to be present at the hearing. When defendant refused to return to Illinois, he waived his right to be present at the hearing. Accordingly, under these circumstances, we conclude that the trial court did not abuse its discretion by accepting defendant's waiver of his right to be present.

In so concluding, we reject defendant's contention that the trial court should not have accepted his waiver without determining that defendant "was knowingly and intelligently waiving his right to be present at the hearing and testify." Specifically, defendant asserts that the court should have assured that defense counsel had personally (1) informed him that (a) witnesses would testify against him at the hearing and (b) his ability to present his claims would be compromised if he failed to attend, and (2) inquired of him whether he wanted to waive his allegation that he did not knowingly and voluntarily enter his guilty plea due to lack of sleep.

The procedure defendant suggests would place a duty on defense counsel to essentially act as the trial court and examine a defendant personally as to whether he (1) understood the consequences of waiving his right to be present at a hearing on a postplea motion and (2)

was knowingly and intelligently waiving his right to be present. In some instances, supreme court rules and statutes require the trial court to personally admonish a defendant prior to accepting a waiver. See, for example, 134 Ill. 2d R. 401 (waiver of counsel); 725 ILCS 5/103—6 (West 2002) (waiver of jury trial). However, no comparable supreme court rule or statute places such a duty on the trial court when accepting a defendant's waiver of his right to be present at a hearing on a postplea motion. See *Wilson*, 257 Ill. App. 3d at 680, 628 N.E.2d at 481 (no supreme court rule or statute requires the trial court to make a direct inquiry to a defendant, rather than to his counsel, to establish a waiver of the defendant's right to be present at trial or jury selection); *cf. People v. Smith*, 176 Ill. 2d 217, 235, 680 N.E.2d 291, 303 (1997) (the trial court does not have a duty to inquire specifically about a defendant's waiver of his right to testify or affirmatively set such waiver on the record). Further, under no circumstances do the rules or statutes require defense counsel to personally admonish a defendant.

### B. Defendant's Claim That He Received Ineffective Assistance of Counsel During Postplea Proceedings

■ Last, defendant argues that he received ineffective assistance of postplea counsel when counsel allowed him to waive his right to be present at the hearing on the motion to withdraw his guilty plea. We disagree.

Ineffective-assistance-of-counsel claims are judged under the now familiar standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To establish ineffective assistance of trial counsel, a defendant must first demonstrate that his defense counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Second, a defendant must demonstrate a reasonable probability that, but for defense counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. The failure to satisfy either *Strickland* prong will preclude a finding of ineffective assistance of counsel. *People v. Morris*, 209 Ill. 2d 137, 179, 807 N.E.2d 377, 403 (2004).

In *People v. Kunze*, 193 Ill. App. 3d 708, 726, 550 N.E.2d 284, 296 (1990), this court held that adjudication of a claim of ineffective assistance of counsel is often better made in proceedings on a petition for postconviction relief, where a complete record can be made.

However, because defendant's ineffective-assistance-of-counsel claim does not rely on matters outside the record, we address it on the merits.

A defendant has a right to waive his presence at any stage of the criminal proceedings against him. See, for example, *Smith*, 188 Ill. 2d at 341, 721 N.E.2d at 557 (a defendant has a right to waive his presence at trial); *People v. Martine*, 106 Ill. 2d 429, 439, 478 N.E.2d 262, 266 (1985) (the defendant had a right to waive her presence during an offer of proof); *Wilson*, 257 Ill. App. 3d at 679, 628 N.E.2d at 481 (holding that the defendant had a right to waive his presence during *voir dire*). Thus, defendant in this case had an absolute right to waive his presence at the hearing on the motion to withdraw his guilty plea. Once defendant decided not to attend the hearing, his postplea counsel simply could not force him to do so. Accordingly, we conclude that counsel's performance in that regard was not deficient in any way.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON and McCULLOUGH, JJ., concur.